501 So.2d 76 (1987)
David Wayne KIBLER, Appellant,
v.
STATE of Florida, Appellee.
No. 86-876.
District Court of Appeal of Florida, Fifth District.
January 15, 1987.
James B. Gibson, Public Defender, and Daniel J. Schafer, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and W. Brian Bayly, Asst. Atty. Gen., Daytona Beach, for appellee.
COBB, Judge.
The appellant, David Kibler, was convicted of burglary with a battery and four counts of sexual battery arising out of an incident wherein he allegedly forced his way into the victim's home and sexually assaulted her four times. He was sentenced to ten years on the burglary count, to run consecutively to four concurrent life sentences on the sexual battery counts.
On appeal Kibler challenges the trial court's refusal to dismiss the jury, given the fact that the prosecutor peremptorily struck all three black persons called for service on the prospective petit jury. The state counters that Kibler has no standing to raise this challenge, since he and his alleged victim are white. Kibler also challenges the trial court's departure from the sentencing guidelines.
The question of standing, insofar as the posited issue concerns the United States Constitution, was answered recently in Batson v. Kentucky, ___ U.S. ___, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Therein, the Supreme Court held that, in order to establish a prima facie case of purposeful discrimination in selection of the jury panel, the defendant "initially must show that he is a member of a racial group capable of being singled out for differential treatment." Id. 106 S.Ct. at 1722. It is undisputed that Kibler cannot make this requisite showing.
The question, then, is whether Neil v. State, 457 So.2d 481 (Fla. 1984), affords Kibler standing to challenge the state's exercise of its peremptory challenges on the *77 basis of violation of his right under Article I, Section 16 of the Florida Constitution to an impartial jury. The Florida Supreme Court expressly based its holding in Neil upon the state constitution, as shown by the language of footnote 12, page 487, of its opinion:
Because the United States Supreme Court has not ruled on this issue, we prefer to rely on our state constitution instead of engaging in an analysis of federal constitutional issues.
Neil preceded Batson by some seven months.
The standing question posed in the instant appeal was not addressed in Neil because the appellant there was a black man. In reviewing the majority opinion in Neil, we find nothing to indicate any disagreement with the subsequent resolution of the problem  i.e., the state's use of peremptory challenges in a racially discriminatory manner to exclude members from a petit jury  by the United States Supreme Court in Batson, which was predicated on the Sixth and Fourteenth Amendments. Had Batson been available to the Florida Supreme Court in September, 1984, it is reasonably apparent that it would have served as the basis for disposition of Neil's petition for certiorari review.
Nothing in Neil persuades us that the Florida Supreme Court intended a different standing test than that set out by the United States Supreme Court in Batson. See also Castaneda v. Partida, 430 U.S. 482, 494, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498, 510 (1977). Therefore, we conclude, on the basis of Batson, that Kibler was without standing to raise his racial challenge at trial to the state's exercise of its peremptory challenges.
Even if we were to hold that Kibler had standing to raise the Neil issue at trial, the facts in this record would not support a reversal. The exclusion of a number of blacks by itself is insufficient to trigger an inquiry into a party's use of peremptory challenges. State v. Neil, 457 So.2d 481 (Fla. 1984); Rose v. State, 492 So.2d 1353 (Fla. 5th DCA 1986). The trial court in the instant case requested a reason for challenges just in case, in his words, State v. Neil may be expanded. Thus, under the Neil test, the burden was shifted by the trial court to the prosecution to show that the questioned challenges were based on the particular case on trial, the parties or witnesses, or characteristics of the challenged persons other than race. 457 So.2d at 487. The evidence presented in the instant case shows sufficient reasons based on the jurors themselves for their exclusion. The trial court found, and the record shows, that the challenges did not occur solely on the basis of race, and the trial court was correct in denying the motion to dismiss the jury pool. See Woods v. State, 490 So.2d 24 (Fla.), cert. denied, ___ U.S. ___, 107 S.Ct. 446, 93 L.Ed.2d 394 (1986); Parker v. State, 476 So.2d 134 (Fla. 1985). See also Macklin v. State, 491 So.2d 1153 (Fla. 3d DCA 1986) (record showed a valid basis for exclusion of at least three of four potential black jurors and, thus, reversal under Neil inappropriate). Accordingly, we affirm the judgment entered below.
In his second point on appeal, appellant contends that the ten-year sentence for the burglary, to run consecutive to the four concurrent life terms, constituted a departure from the sentencing guidelines without written reasons and, therefore, reversal is required. The guideline score sheet in the instant case showed a total of 852 points, with the appropriate guideline sentence being life imprisonment.
The Florida Supreme Court in Rease v. State, 493 So.2d 454 (Fla. 1986), has recently ruled that a deviation from the guidelines occurs when the recommended sentence is life imprisonment, and the trial court sentences for an additional term consecutive to that life sentence. The court adopted the dissent in the district court Rease case, 478 So.2d 1150 (Fla. 1st DCA 1985), which focused on the possibility of a commutation of the life sentence as a basis to show that a term added consecutively to a life sentence is a total sentence greater than a single sentence of life imprisonment. *78 Accordingly, we vacate the sentence for burglary in the instant case, and remand for entry of a sentence in conformity with the guidelines, or for the entry of valid written reasons for departure.
AFFIRMED; SENTENCE VACATED; and REMANDED.
UPCHURCH, C.J., concurs.
ORFINGER, J., concurs specially with opinion.
ORFINGER, Judge, concurring specially.
While I concur in the result reached in the majority opinion, I believe that the jury selection issue should not be decided on the question of standing, but on the basis that the trial court correctly held that the disputed challenges did not occur solely on the basis of race. Once we agree on that issue, any decision on "standing" is dictum which I feel we should avoid.
On the basis of the test which the Florida supreme court adopted in State v. Neil, 457 So.2d 481 (Fla. 1984),[1] I am not as confident as the majority that the court would have embraced the more restricted test of Batson v. Kentucky, ___ U.S. ___, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) had Batson then been decided. Nothing in the Neil test reveals the purpose of the court to limit the challenge only to cases where the defendant is a member of the same race as the challenged jurors. In fact, it is clear that the Neil court intended to decide the issue on state constitutional grounds rather than on the federal constitution or on federal court decisions. In many instances, state constitutional protections are broader than the corresponding federal rights.
In Castillo v. State, 466 So.2d 7 (Fla. 3d DCA 1985) the court reversed a conviction and remanded the case for a new trial on the authority of Neil, noting that the question of whether a defendant may protest that an identifiable group other than his own has been systematicaly excluded from the petit jury had been answered in the affirmative in Peters v. Kiff, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972). In Peters, the Court held that "whatever his race, a criminal defendant has standing to challenge the system used to select his grand or petit jury, on the ground that it arbitrarily excludes from service the members of any race, and thereby denies him due process of law." [Emphasis added]. 407 U.S. at 504, 92 S.Ct. at 2169. Although Peters was not decided in the context of peremptory challenges, in my opinion it would control the issue of standing in this case, and there is no indication that Batson intended to narrow its scope. Even if we were to conclude that Batson was intended to narrow the holding of Peters, there is no clearcut indication that the Florida supreme court would similarly narrow Neil.[2] My personal belief is that Neil is not as *79 limited in its scope as the majority opinion attributes to it, but because we do not have to decide that issue, I prefer not to.
NOTES
[1] initial presumption is that peremptories will be exercised in a nondiscriminatory manner. A party concerned about the other side's use of peremptory challenges must make a timely objection and demonstrate on the record that the challenged persons are members of a distinct racial group and that there is a strong likelihood that they have been challenged solely because of their race. If a party accomplishes this, then the trial court must decide if there is a substantial likelihood that the peremptory challenges are being exercised solely on the basis of race. If the court finds no such likelihood, no inquiry may be made of the person exercising the questioned peremptories. On the other hand, if the court decides that such a likelihood has been shown to exist, the burden shifts to the complained-about party to show that the questioned challenges were not exercised solely because of the prospective jurors' race. The reasons given in response to the court's inquiry need not be equivalent to those for a challenge for cause. If the party shows that the challenges were based on the particular case on trial, the parties or witnesses, or characteristics of the challenged persons other than race, then the inquiry should end and jury selection should continue. On the other hand, if the party has actually been challenging prospective jurors solely on the basis of race, then the court should dismiss that jury pool and start voir dire over with a new pool. [Footnotes omitted]. [Emphasis added].
457 So.2d at 486-487.
[2] The Florida supreme court has relied on Neil since Batson was decided, but has given no indication that a narrower view was intended. See, e.g., Wright v. State, 491 So.2d 1100 (Fla. 1986).